UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RUSSELL JD SMITH,<br><br>                Plaintiff,<br><br>   v.<br><br>HOUSING AUTHORITY OF KITTITAS COUNTY, PERRY ROWE, KATTIE HAGIN, MISTY NESS, JEFF HUGHS, CAROL MILLER RHODES, NICALEE SMITH, DR. ROBERT PERKINS, JIM DENISON, MAINTENANCE PERSONNEL CREW,<br><br>                Defendants. | NO:  1:14-CV-3140-RMP<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

Before the Court is Defendants' Motion for Summary Judgment, **ECF No. 19**, and the Motion for Summary Judgment filed by Plaintiff Russell J.D. Smith, **ECF No. 25**.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1

**BACKGROUND**

In 2001, Mr. Smith began renting a unit at Trinal Manor, an apartment complex that is owned and operated by Defendant Housing Authority of Kittitas County ("HAKC"). ECF No. 20 at 2 (Defendants' Statement of Material Facts).[1] Mr. Smith moved to another apartment in the complex, Unit 201, on about February 20, 2003. *See* ECF No. 21, Ex. E at 10.

In early February 2008, Mr. Smith requested that certain repairs be made to Unit 201 and reported that mold was growing under the sink. ECF No. 21, Ex. G. The completed work order indicates that the mold was treated. ECF No. 21, Ex. G.

Between February 2008 and June 2013, Mr. Smith did not request any maintenance in relation to mold. ECF No. 21, Ex. D at 3-4. In late June 2013, however, Mr. Smith reported in an email that black mold was growing under the sink and that HAKC had not adequately resolved the issue after his 2008 work request. ECF No. 21, Ex. D at 3-4; *see also* ECF No. 21, Ex. J at 2 ("They threw some 'white powdery stuff' on it and its [sic] been that way ever since."). Mr.

---

[1] The Local Rules provide that a party opposing a motion for summary judgment must file a statement "setting forth the specific facts which the opposing party asserts establishes a genuine issue of material fact precluding summary judgment." LR 56.1(b). If the party opposing summary judgment fails to submit such a statement, "the Court may assume that the facts as claimed by the moving party are admitted to exist without controversy . . . ." *See* LR 56.1(d). The Court sent Mr. Smith notice of the requirement to submit a statement of disputed facts. ECF No. 22. Nevertheless, Mr. Smith failed to submit a statement of facts in addition to his briefing and exhibits. Thus, the Court assumes that the facts as claimed by Defendants in their Statement of Material Facts exist without controversy.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 2

1  Smith thereafter emailed HAKC information regarding mold remediation services
2  and the potential health effects of mold.  ECF No. 21, Ex. K.

3      On June 27, 2013, in response to Mr. Smith's report of black mold, HAKC
4  hired a third-party environmental consulting firm, Fulcrum Environmental
5  Consulting ("Fulcrum"), to test Unit 201.  ECF No. 21, Ex. D at 4.  Fulcrum "did
6  not identify any visible mold growth[,]" but noted "historic water staining on wood
7  components and gypsum wallboard beneath the kitchen and bathroom sinks."  ECF
8  No. 21, Ex. L at 3.  Fulcrum evaluated the mold spores present in Unit 201 and
9  explained that the "[c]oncentrations of spores identified by laboratory analysis
10 [were] consistent with settled spores in typical living environments and [were] not
11 representative of fungal growth."  ECF No. 21, Ex. L at 7.

12     Based on its observations, Fulcrum recommended actions including
13 extensively cleaning the carpet, removing some areas of the wallboard to allow an
14 inspection of the interstitial spaces, and offering to relocate Mr. Smith until Unit
15 201 had been rehabilitated.  ECF No. 21, Ex. L at 8.

16     To allow Fulcrum to rehabilitate Unit 201 and conduct further testing,
17 HAKC offered Mr. Smith alternative accommodations on July 2, July 19, July 24,
18 and August 2, 2013.  ECF No. 21, Ex. D at 5; M at 2.  Mr. Smith refused all offers
19 of alternative temporary housing.  ECF No. 21, Ex. D at 5.  HAKC arranged for
20 Fulcrum to return to Unit 201 to complete a follow-up assessment on July 18 and

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 3

July 22, 2013, but Mr. Smith refused to allow Fulcrum to complete the assessment. ECF No. 21, Exs. B at 4; D at 4-5; M at 2.

Mr. Smith did not pay his full rent in August or September 2013. ECF No. 20 at 6. He alleged that he was entitled to rent abatement under the lease agreement because HAKC had failed to provide alternative accommodations. *See* ECF No. 20 at 6. According to the rent abatement clause in the lease agreement, Mr. Smith would be entitled to rent abatement if HAKC failed to correct a defect "hazardous to life, health, and safety" or to offer alternative accommodations. ECF No. 21, Ex. E at 6. Rent would not abate, however, if Mr. Smith "fail[ed] to give written notice or reject[ed] reasonable alternative temporary accommodations . . . ." ECF No. 21, Ex. E at 6.

HAKC filed a complaint for unlawful detainer against Mr. Smith for failure to pay rent. ECF No. 21, Ex. N. Mr. Smith was evicted in late September 2013. *See* ECF No. 21, Ex. O (Order on Writ of Restitution). Samples taken from Unit 201 after Mr. Smith's eviction tested positive for methamphetamine. *See* ECF No. 21, Ex. P.

After Mr. Smith was evicted, HAKC notified him of charges that he owed. ECF No. 21, Exs. Q, R. HAKC initially estimated that Mr. Smith owed $11,521.60, mostly in charges for damages, cleaning, and labor. *See* ECF No. 21, Ex. Q at 3. HAKC later revised its calculation to $6,844.11. ECF No. 21, Ex. R at

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 4

2. HAKC informed Mr. Smith that if he failed to respond to the notice, HAKC would forward the account to a collection agency. ECF No. 21, Ex. Q at 1. Mr. Smith did not arrange to make payments to HAKC, and HAKC referred Mr. Smith's account to Evergreen Collection Agency ("Evergreen"). ECF No. 20 at 7-8.

On May 30, 2014, Mr. Smith filed a housing discrimination complaint against HAKC with the U.S. Department of Housing and Urban Development ("HUD"). ECF No. 21, Ex. A. In the complaint, Mr. Smith alleged that he had a disability that was exacerbated by mold. ECF No. 21, Ex. A at 1. Mr. Smith claimed that, beginning in 2003, he had submitted several requests for his unit to be tested for black mold and that the result of the July 27, 2013, test was "a high degree of black mold contamination." ECF No. 21, Ex. A at 1. Further, Mr. Smith asserted that the alternative temporary accommodations were insufficient. *See* ECF No. 21, Ex. A at 2. Mr. Smith believed that he was evicted and charged for maintenance and labor in retaliation for requesting the reasonable accommodation of removing the black mold. ECF No. 21, Ex. A at 2.

HUD referred Mr. Smith's complaint to the Washington Human Rights Commission, which conducted an investigation and ultimately concluded that there was not sufficient evidence to show that HAKC had discriminated against Mr. Smith. ECF No. 20 at 8.

Mr. Smith, who is a pro se litigant, filed his Complaint in this Court on October 1, 2014. ECF No. 1. The Court found that Mr. Smith had failed to plead sufficient facts to support a claim for relief, and therefore allowed Mr. Smith to file a First Amended Complaint. ECF No. 5. In his First Amended Complaint, Mr. Smith alleges that Defendants negligently failed to remove mold from Unit 201, violated various federal laws, defamed him, and violated HUD privacy principles. *See* ECF No. 6.

Defendants move for summary judgment. ECF No. 19. Apparently in response to Defendants' Motion for Summary Judgment, Mr. Smith filed his own Motion for Summary Judgment. *See* ECF No. 25.

## ANALYSIS

*Summary Judgment Standard*

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The party asserting the existence of an issue of material fact must show "'sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *T.W. Elec.*

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 6

*Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).  The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists."  *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).  In deciding a motion for summary judgment, a court must construe the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party.  *T.W. Elec. Serv.*, 809 F.2d at 630-31.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *Cities Serv. Co.*, 391 U.S. at 288).

Defendants argue that they are entitled to summary judgment on each of Mr. Smith's five claims, which the Court will consider in turn.

Count 1 – Negligence

Mr. Smith alleges that Defendants committed acts of criminal negligence from 2001 through 2013 by failing to perform duties required by the lease agreement and by federal statutes.  ECF No. 6 at 5-7.  In particular, Mr. Smith claims that, despite his work requests, Defendants made no repairs to Unit 201,

1  that no black mold remedies are evidenced in documentation, and that no work

2  orders were signed.  ECF No. 6 at 5-7.

3       As Defendants contend, criminal negligence is a standard of criminal

4  culpability, not a civil cause of action.  *See* RCW 9A.08.010(1)(d) (defining

5  criminal negligence).  Mr. Smith's claims in Count 1 instead seem to be based on

6  allegations that Defendants breached the terms of the lease agreement or failed to

7  meet duties imposed under a theory of civil negligence.

8       A federal court exercising supplemental jurisdiction over state law claims is

9  "bound to apply state law to them . . . ."  *United Mine Workers of Am. v. Gibbs*,

10 383 U.S. 715, 726 (1966).  In Washington, "[a] breach of contract is actionable

11 only if the contract imposes a duty, the duty is breached, and the breach

12 proximately causes damage to the claimant."  *Nw. Indep. Forest Mfrs. v. Dep't of*

13 *Labor & Indus.*, 78 Wn. App. 707, 712 (1995) (citing *Larson v. Union Inv. & Loan*

14 *Co.*, 168 Wash. 5 (1932)).  "The elements of negligence include the existence of a

15 duty to the plaintiff, breach of that duty, and injury to the plaintiff proximately

16 caused by the breach."  *Sheikh v. Choe*, 156 Wn.2d 441, 447-48 (2006).

17      Mr. Smith has failed to raise a genuine issue of material fact as to a cause of

18 action for either breach of contract or negligence.  Mr. Smith's general assertion

19 that no repairs were made to Unit 201, ECF No. 25 at 5, is defeated by his own

20 account of repairs that were done, even if they were not completed to his

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 8

satisfaction, *see, e.g.*, ECF No. 25 at 9 (noting that new flooring improperly was installed over old flooring). Moreover, Defendants submitted a completed work order indicating that on February 8, 2008, Mr. Smith's faucet was replaced and mold in the unit was treated. *See* ECF No. 21, Ex. G. Finally, when Mr. Smith again complained of mold five years later, HAKC quickly instructed Fulcrum to test the unit. *See* ECF No. 21, Ex. D at 4. Mr. Smith has not raised a genuine issue for trial regarding whether HAKC repaired Unit 201.

Additionally, despite Mr. Smith's contention that no black mold remedies were documented, Fulcrum's report does not support Mr. Smith's claim that treatment for black mold was needed. Rather than concluding that Unit 201 was contaminated with growing mold, Fulcrum suggested that "the heavily soiled carpet flooring within the unit has the potential to be a reservoir for fungal spores based on the introduction of fungal spores through common introduction on shoes and clothing." *See* ECF No. 21, Ex. L at 6, 7 ("Concentrations of spores identified by laboratory analysis are consistent with settled spores in typical living environments and [are] not representative of fungal growth."). It also is undisputed that, when Fulcrum attempted on two occasions to conduct a further inspection, Mr. Smith refused to allow Fulcrum to enter. *See* ECF No. 21, Ex. D at 4-5; M at 2. Thus, Mr. Smith has not shown why the lack of documentation of any

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 9

mold treatment is a material fact: he has not raised a genuine issue as to the preliminary fact of whether toxic black mold was growing in his unit.

Finally, Mr. Smith has not offered any authority indicating that Defendants were obligated to sign the completed work orders, such that this contention does not support the theory that Defendants breached any contractual or legal duties.

The Court finds that Mr. Smith has failed to raise a genuine dispute of material fact as to his allegations of negligence or breach of contract, as described in Count 1.

<u>Count 2 – The Violent Crime Control and Law Enforcement Act and the Fair Housing Act</u>

Mr. Smith alleges that Defendants violated the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141, and the Federal Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601-3619, 3631. ECF No. 6 at 7.[2] Defendants seek summary judgment on both theories.

*A. The Violent Crime Control and Law Enforcement Act of 1994*

Defendants argue that, by its plain language, the Violent Crime Control and Law Enforcement Act of 1994 is inapplicable to this case. ECF No. 19 at 12. The

---

[2] In Count 2, Mr. Smith asserts that Defendants' actions additionally contravened "many state and local laws . . . ." ECF No. 6 at 7. The Court finds that this vague reference to state and local laws does not meet the pleading requirements of Federal Rule of Civil Procedure 8. Thus, the Court considers Mr. Smith's claims under only the Violent Crime Control and Law Enforcement Act and the FHA.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 10

language of a statute "cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989). Furthermore, it is a court's "duty 'to give effect, if possible, to every clause and word of a statute.'" *United States v. Menasche*, 348 U.S. 528, 538-539 (1955) (quoting *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883)).

Mr. Smith relies on a provision of the Violent Crime Control and Law Enforcement Act codified at 42 U.S.C. § 14141, which reads as follows:

> It shall be unlawful for any governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority, to engage in a pattern or practice of conduct **by law enforcement officers or by officials or employees of any governmental agency with responsibility for the administration of juvenile justice or the incarceration of juveniles** that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

42 U.S.C. § 14141(a) (emphasis added). In addition, § 14141(b) states that only the Attorney General of the United States may, "in the name of the United States," introduce a civil action for a violation of § 14141(a).

Mr. Smith's allegations do not arise in the context of the administration of juvenile justice or the incarceration of juveniles. Furthermore, 42 U.S.C. § 14141(b) states, by its plain language, that violations of § 14141(a) may be brought only by the Attorney General of the United States. Therefore, Defendants are entitled to

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 11

judgment as a matter of law in regard to Mr. Smith's claim that they violated 42 U.S.C. § 14141.

*B. The Federal Fair Housing Act*

Mr. Smith argues that Defendants violated the FHA by discriminating against him on the basis of his disability. ECF No. 6 at 7-8. The Ninth Circuit applies a Title VII discrimination analysis in FHA claims; accordingly, "a plaintiff can establish an FHA discrimination claim under a theory of disparate treatment or disparate impact." *Gamble v. City of Escondido*, 104 F.3d 300, 304-05 (9th Cir. 1997) (internal citations removed).

Mr. Smith's FHA claims suggest a theory of disparate treatment based on his disability rather than disparate impact of outwardly neutral practices. *See* ECF No. 25 at 4 (claiming that Defendants conspired "to intentionally cause the Plaintiff harm with discriminatory intent"). *Cf. Pfaff v. U.S. Dep't of Hous. & Urban Dev.*, 88 F.3d 739, 745 (9th Cir. 1996) (describing elements of disparate impact theory under the FHA).

To bring a disparate treatment claim against a landlord, a "plaintiff must establish that the defendant had a discriminatory intent or motive for taking a [housing]-related action." *See Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012) (internal quotation marks omitted). A discriminatory motive may be established by the landlord's informal decision-making or by a formal, facially

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 12

discriminatory policy; however, "'liability depends on whether the protected trait . . . actually motivated'" the landlord's decision. *Id.* (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)).

Although Mr. Smith asserts that Defendants violated a broad range of statutory provisions, the only sections that potentially create relevant causes of action are 42 U.S.C. §§ 3604 and 3617.  Section 3604 prohibits discrimination in the sale or rental of housing.  42 U.S.C. § 3604.  Among other acts, it is unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap[,]" or to discriminate "in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap . . . ." 42 U.S.C. § 3604(f)(1), (2).

Section 3617 provides that

> [i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617.

Mr. Smith has failed to raise a genuine issue of material fact as to a disparate treatment cause of action under either § 3604 or § 3617 of the FHA.  Mr. Smith presents no facts showing that HAKC treated him less favorably than other tenants

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 13

due to a disability, which might support a violation of § 3604. Additionally, contrary to Mr. Smith's claim that HAKC refused to rent to him, he rented from HAKC from 2001 until his eviction in 2013. ECF No. 20 at 2, 7. Moreover, there is nothing in the record showing HAKC was motivated to initiate eviction proceedings against Mr. Smith because of his stated disability; rather, the evidence supports that Mr. Smith was evicted only because of his failure to pay rent. *See* ECF No. 21, Ex. N. Nor has Mr. Smith offered evidence that Defendants intimidated or threatened him for exercising his rights under the FHA, which would contravene § 3617.[3]

Defendants are entitled to summary judgment on Mr. Smith's second count.

Count 3 – Federally Protected Activities and Title VIII of the Civil Rights Act of 1968

Mr. Smith alleges that Defendants violated 18 U.S.C. § 245 and re-states his allegation of a violation of the FHA, which the Court discussed above. *See* ECF No. 6 at 8-9. Section 245 prohibits the use of force or threat of force to intimidate

---

[3] Defendants also argue that Mr. Smith cannot provide evidence demonstrating that they violated § 3631, regarding intimidation. ECF No. 19 at 16-17. The Court agrees with Defendants that Mr. Smith has not provided any evidence indicating that Defendants used force or the threat of force to injure, intimidate, or interfere with Mr. Smith. However, § 3631 creates only a criminal prohibition, not a private right of action, such that Mr. Smith cannot seek relief pursuant to that section. *See* 421 U.S.C. § 3631; *see also McZeal v. Ocwen Fin. Corp.*, 252 F.3d 1355, *2 (5th Cir. 2001) (per curiam) (finding that the plaintiff "*cannot* state a claim under § 3631; it is a criminal statute under which there is no private cause of action").

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 14

or interfere with any person who is engaged in certain federally protected activities.  18 U.S.C. § 245.

Mr. Smith apparently contends that Defendants violated Section 245 by interfering with his ability to rent from HAKC.  *See* ECF No. 25 at 14.  Defendants argue that Mr. Smith has not made a sufficient factual showing to support his claims.  ECF No. 19 at 17-19.

The Court agrees that Mr. Smith has not provided any evidence showing that Defendants unlawfully prevented him from participated in a protected activity.  Rather, Mr. Smith failed to pay his rent, and Defendants evicted him for that reason.

However, another problem with Mr. Smith's claim under § 245 is that the statute does not create a private right of action.  "The question of the existence of a statutory cause of action is, of course, one of statutory construction."  *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979).  The Supreme Court has been "reluctant to infer a private right of action from a criminal prohibition alone."  *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994).  Furthermore, the violation of a federal statute does not provide a right of action to the individual alleging harm.  *Touche*, 442 U.S. at 568.

Based on the plain text of 18 U.S.C. § 245, the Court finds that it is a criminal statute and that it does not give a private party the right to sue another

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 15

private party. *See Cooley v. Keisling*, 45 F. Supp. 2d 818, 820 (D. Or. 1999) (concluding that 18 U.S.C. § 245 is a criminal statute and that it does not grant a private right of action).

Thus, Defendants are entitled to summary judgment on Count 3.

Count 4 – Defamation, Slander, Libel, and Fraud

Mr. Smith claims that Defendants committed the torts of defamation, slander, libel, and fraud. ECF No. 6 at 9-10. Because defamation, slander, and libel are related torts, the Court will considered those alleged torts separately from Mr. Smith's fraud claim.

*A. Defamation, Slander and Libel*

In Washington, libel and slander "are separate manifestations of the same basic tort" of defamation. 16A David K. DeWolf & Keller W. Allen, *Washington Practice, Tort Law And Practice* § 20:2 (4th ed.). In general, libel is the publication of defamatory matter by written or printed words and slander is defamation by spoken words. *See id.*

Mr. Smith alleges that Defendants defamed him by publishing statements that were harmful to his reputation and were made with malicious intent. ECF No. 6 at 9-10. "To overcome a defendant's motion for summary judgment dismissal in an action for defamation, a plaintiff must establish falsity, unprivileged

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 16

1    communication, fault, and damages." *Sisley v. Seattle Pub. Sch.*, 180 Wn. App. 83,
2    85 (2014).

3    Mr. Smith specifically claims that Defendants defamed him by sending his
4    account to Evergreen. ECF No. 6 at 7. He further alleges that Defendants
5    defamed him in a letter that he received from HAKC on June 26, 2013. ECF No. 6
6    at 33-34.

7    Mr. Smith has failed to raise a genuine issue of material fact as to whether
8    Defendants defamed him by sending his account to Evergreen. According to the
9    terms of his lease, Mr. Smith was responsible to pay rent until the lease was
10   terminated. ECF No. 21, Ex. E at 1. Mr. Smith does not deny that he failed to pay
11   the full amount of rent due. *See* ECF No. 6 at 4. Therefore, Defendants published
12   no false information regarding Mr. Smith by referring his account to Evergreen.

13   There also is no genuine issue of material fact regarding whether the letter
14   dated June 26, 2013, constituted an act of defamation. Although Mr. Smith points
15   out alleged inconsistencies and his disagreement with the contents of the letter, he
16   has failed to make a sufficient showing of damages. Indeed, Mr. Smith himself
17   appears to have been the only recipient of the letter, such that it is hard to
18   understand how its contents could have damaged Mr. Smith.

19   Thus, Mr. Smith has failed to raise a genuine issue of material fact as to his
20   allegations of defamation, as described in Count 4.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 17

*B. Fraud*

Mr. Smith also alleges that Defendants committed fraud. To bring a successful claim of fraud, a plaintiff must prove the following nine elements:

> (1) representation of an existing fact, (2) the materiality of the representation, (3) the falsity of the representation, (4) the speaker's knowledge of the falsity of the representation or ignorance of its truth, (5) the speaker's intent that the listener rely on the false representation, (6) the listener's ignorance of its falsity, (7) the listener's reliance on the false representation, (8) the listener's right to rely on the representation, and (9) damage from reliance on the false representation.

*Landstar Inway Inc. v. Samrow*, 181 Wn. App. 109, 124 (2014).

The Federal Rules of Civil Procedure impose heightened pleading requirements for claims of fraud. "Rule 9(b) requires that the pleader state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (explaining that "Rule 9(b)'s particularity requirement applies to state-law causes of action").

Mr. Smith alleges that the work orders, move-in and move-out inspection checklists, and annual inspection forms, among other submissions, amount to fraud on the part of the Defendants. *See* ECF No. 6 at 15, 21. Specifically, Mr. Smith alleges that "although the paperwork shows inventory/supplies were used they in fact were not, although labor hours are marked down and employees paid there

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 18

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 18

were in fact no hours of labor performed . . . . This has been the case for each and every work order for 12 years." ECF No. 6 at 21.

The Court finds that Mr. Smith has failed to plead the alleged fraud with sufficient particularity. Although Mr. Smith alleges that some specific items in work orders are false, his challenge essentially is a broad claim that all work orders are fraudulent. *See* ECF No. 6 at 21 (stating that misrepresenting facts on work orders "has been the case for each and every work order for 12 years"). Moreover, Mr. Smith has not alleged how he was damaged by the allegedly false statements.

The Court finds that Defendants are entitled to summary judgment on Mr. Smith's fraud claim.

Count 5 – Violation of HUD Privacy Principles

Mr. Smith alleges that Defendants violated HUD's privacy principles. ECF No. 6 at 10-11. The violations allegedly occurred when Defendants sent information about Mr. Smith to Evergreen, Fulcrum, the Veteran's Administration, and the Kittitas County District Court. ECF No. 6 at 11.

Documents such as mission statements, internal policies, or declarations of organizational values do not provide aggrieved third parties with a cause of action, or the right to sue, based on their violation. *See United States v. Derr*, 968 F.2d 943, 946 (9th Cir. 1992) (finding that internal policies of the Internal Revenue Service did not provide legally enforceable rights).

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 19

Mr. Smith has not provided any authority indicating that he may bring a cause of action based on the alleged violation of HUD's privacy principles. Therefore, the Court finds that Mr. Smith has failed to raise a genuine issue of material fact regarding his fifth claim.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendants' Motion for Summary Judgment, **ECF No. 19**, is **GRANTED**.

2. Mr. Smith's Motion for Summary Judgment, **ECF No. 25**, is **DENIED**.

The District Court Clerk is directed to enter this Order, provide copies to counsel and Mr. Smith, enter judgment accordingly, and close this case.

**DATED** this 19th day of August 2015.

                          *s/ Rosanna Malouf Peterson*
                         ROSANNA MALOUF PETERSON
                     Chief United States District Court Judge